UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRYAN ROZENGARD,

        Petitioner,             Case No. 1:25-cv-848

v.                                     Honorable Maarten Vermaat

MICHAEL BURGESS,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. The Court will grant Petitioner's motion for leave to proceed *in forma pauperis*.[1] (ECF No. 4.) The Court will also grant Petitioner's motion (ECF No. 12) for expedited review of his recent supplemental brief (ECF No. 11).

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 3.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

---

[1] Petitioner has recently paid the filing feel. However, resolution of Petitioner's *in forma pauperis* motion might impact later proceedings in the case. Accordingly, the Court will still address and grant his motion to proceed *in forma pauperis*.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[2] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.   Factual Allegations

Petitioner is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Respondent Michael Burgess is the Warden at ECF and Petitioner's immediate custodian.

---

United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Petitioner is serving six concurrent sentences of 8 years, 4 months to 15 years, imposed on December 21, 2015, following his Bay County Circuit Court jury conviction for six counts of third-degree criminal sexual conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d. *People v. Rozengard*, No. 331140, 2017 WL 1683650 (Mich. Ct. App. May 2, 2017). The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> Defendant, then aged nineteen, and the victim, then aged fifteen, engaged in a sexual relationship that the victim contended was consensual; the relationship was discovered when the victim's mother walked in on them in the victim's bed. Evidence collected during the subsequent police investigation, and admitted at trial, included messages defendant and the victim had exchanged on Facebook and by cell phone text messages. Defendant contends that he was prejudiced by a lack of adequate notice of the charges against him, improper admission of Facebook messages from before any of the charged offenses were alleged to have occurred, and trial counsel's failure to request a hearing to determine defendant's eligibility to avoid registering as a sex offender. In a Standard 4 brief, defendant also argues that he was prejudiced by the delay between his arrest and his arraignment.

*Id*. at *1 (footnote omitted). Specifically with regard to the delay between arrest and arraignment, the court stated:

> [D]efendant finally argues that he was prejudiced by the four-month delay between his arrest and his arraignment. Defendant was arrested the day he was discovered in bed with the victim, on October 5, 2014. He was arraigned in district court on February 10, 2015; this was 128 days later according to the time calculation formula under MCR 1.108(1). Defendant unclearly implies in his brief, but testimony in the trial court expressly confirms, that his arrest was not made pursuant to a warrant, but rather because his presence with the victim was a violation of a condition of his bond for another criminal matter that was ongoing at the time. Police retrieved a cell phone belonging to defendant, and some other items of his property, from the victim's residence; defendant did not have a cell phone on his person when he was arrested later in the day. The phone was searched pursuant to a search warrant. It appears that the gravamen of defendant's argument is that the evidence from the phone should be suppressed because he was allegedly not immediately brought before a magistrate regarding the basis for his arrest.

*Id*. at *3.

The 128-day delay referenced above also forms the basis for Petitioner's habeas challenge to his convictions. In Petitioner's petition (ECF No. 1), brief (ECF No. 5), supplemental brief (ECF No. 6), motion to produce evidence (ECF No. 7), brief in support of that motion (ECF No. 8), letter memorandum of law (ECF No. 9), judicial notice (ECF No. 10), and second supplemental brief (ECF No. 11), he argues that the government's failure to promptly arraign him ultimately deprived the court of subject-matter jurisdiction to prosecute him for the CSC-III charges.

Petitioner's description of the constitutional wrongs at issue changes somewhat from one filing in this case to the next. He also argues that the 22 days he was detained after his October 5, 2014, warrantless arrest, without any demonstration of probable cause, violated his Fourth Amendment rights. He claims that the prolonged detention preceding his trial violated his Fourteenth Amendment substantive and procedural due process rights in that it created a radical jurisdictional defect. And, finally, Petitioner contends that his prolonged unlawful detention and repeated postponements resulted in a violation of his Sixth Amendment speedy-trial rights.

**II.    AEDPA Standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an

5

unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in

6

federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was

7

unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Analysis

Petitioner's claim for relief depends entirely on the premise that he was either illegally arrested or illegally detained after his arrest. Essentially, Petitioner claims that failing to make a probable cause determination after a warrantless arrest taints any subsequent conviction and, he claims further, that the failure creates a radical jurisdictional defect. Petitioner is simply wrong.

#### A. Lack of a Timely Probable Cause Determination

Petitioner bases his claims on the United States Supreme Court's decision in *Gerstein v. Pugh*, 420 U.S. 103 (1975). In *Gerstein*, the Court held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." 420 U.S. at 114. Petitioner contends that the State's failure to provide him with the protection afforded by the Fourth Amendment's probable cause determination before detaining him for an extended period invalidates the CSC-III convictions.

The *Gerstein* Court, however, concluded that the failure to provide a timely probable cause determination did not invalidate a subsequent conviction:

> In holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute. Instead, we adhere to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information. *Beck v. Washington*, 369 U.S. 541, 545 (1962); *Lem Woon v. Oregon*, 229 U.S. 586 (1913). Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886). Thus, as the Court of Appeals noted below, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause. 483 F.2d, at 786–787. *Compare Scarbrough v. Dutton*, 393 F.2d 6 (CA5 1968), *with Brown v. Fauntleroy*, 442 F.2d 838 (1971), *and Cooley v. Stone*, 414 F.2d 1213 (1969).

*Id*. at 119–120 (parallel citations omitted). Therefore, if Petitioner had been detained for 22 days or even 128 days without a probable cause determination, the unlawful detention would not provide a ground for habeas relief.[3] Petitioner has failed to demonstrate that the state court's rejection of his unlawful detention claim was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief.

---

[3] The Michigan Court of Appeals, on Petitioner's direct appeal, determined that Petitioner's October 5, 2014, arrest was not for the CSC-III crimes; rather, he was arrested because his presence in bed with the victim, a 15-year-old girl, was a violation of the terms of a bond issued in connection with another earlier-filed but still pending criminal prosecution. *Rozengard*, 2017 WL 1683650, at *3–4. The trial court revoked Petitioner's bond on October 6, 2014. Case Details, *People v. Rozengard*, No. 2014-10108-FH (Bay Cnty. Cir. Ct.). Petitioner was arrested for the CSC-III violations in early February of 2015. (*See* Pet., ECF No. 1-1, PageID.6–7; Warrant Authorization Requests and Complaints, ECF No. 9-5, PageID.54–59.) He was arraigned on those charges on February 10, 2015. *Rozengard*, 2017 WL 1683650, at *3.

### B. Lack of Subject Matter Jurisdiction

Petitioner further claims that holding him without a probable cause determination created a radical jurisdictional defect such that holding him in custody on the subsequent convictions violates his Fourteenth Amendment substantive and procedural due process rights. That claim is also meritless.

The phrase "radical jurisdictional defect" does not derive from federal constitutional jurisprudence. Rather, it is a prerequisite to obtaining state habeas corpus relief. In *Moses v. Dep't of Corr.*, 736 N.W.2d 269 (Mich. App. 2007), the court explained:

> The [state] writ of habeas corpus deals with radical defects that render a judgment or proceeding absolutely void. *Hinton v. Parole Bd.*, 148 Mich. App. 235, 244–245, 383 N.W.2d 626 (1986). In general, MCL 600.4310(3) prohibits habeas corpus relief to "[p]ersons convicted, or in execution, upon legal process, civil or criminal." But relief "is open to a convicted person in one narrow instance, . . . where the convicting court was without jurisdiction to try the defendant for the crime in question." *People v. Price*, 23 Mich. App. 663, 669–670, 179 N.W.2d 177 (1970). Moreover, to qualify for habeas corpus relief, the jurisdictional defect must be radical, rendering the conviction absolutely void. *Id.* at 670, 179 N.W.2d 177. "A radical defect in jurisdiction contemplates . . . an act or omission by state authorities that clearly contravenes an express legal requirement in existence at the time of the act or omission." *Id.* at 671, 179 N.W.2d 177. Nevertheless, habeas relief may be denied in the exercise of a court's discretion where full relief may be obtained in other more appropriate proceedings. *See Phillips, supra* at 566, 396 N.W.2d 482; *see also Jones, supra* at 658, 664 N.W.2d 717 (order of mandamus, rather than writ of habeas corpus, was the proper remedy for the DOC's failure to conduct a timely fact-finding hearing on parole violation charges). Thus, while plaintiff may not use a habeas proceeding as a substitute for an appeal or to review the merits of his criminal conviction, plaintiff may assert a radical defect in the jurisdiction of the court in which his conviction was obtained. MCL 600.4310(3); *Price, supra* at 669–670, 179 N.W.2d 177.

*Moses*, 736 N.W.2d at 273.

In *Hornsby v. Dep't of Corr.*, No. 368860, 2025 WL 1121102 (Mich. App. Apr. 15, 2025), the court explained the type of jurisdictional defect that might be considered radical:

> "It is a longstanding rule that defects in a court's subject-matter jurisdiction render a judgment void *ab initio*." *People v Washington*, 508 Mich. 107, 129; 972 N.W.2d 767 (2021). "Subject-matter jurisdiction is a legal term of art[ ] that concerns a court's authority to hear and determine a case." *Id.* at 121. "This authority is not dependent on the particular facts of the case but, instead, is dependent on the character or class of the case pending." *Id.* (cleaned up). "[W]e have recognized that circuit courts have subject-matter jurisdiction over felony cases." *Id.* at 122-123.
>
> "Once a preliminary examination is held and the defendant is bound over on any charge, the circuit court obtains jurisdiction over the defendant." *People v Unger*, 278 Mich. App. 210, 221; 749 N.W.2d 272 (2008). "Subject matter jurisdiction is presumed unless expressly denied by constitution or statute . . . ." *People v Goecke*, 457 Mich. 442, 458; 579 N.W.2d 868 (1998).

*Hornsby*, 2025 WL 1121102, at *3–4. Arrest or detention without probable cause does not deprive a court of jurisdiction. *See People v. Nawrocki*, 150 N.W.2d 516, 520–21 (Mich. App. 1967) ("That a defendant's arrest was without a warrant or was illegal, cannot be considered at the trial, where it was followed by a complaint and warrant on which the defendant was held for trial, or, where the defendant was regularly bound over to the circuit court for trial. Even though an arrest is irregular, the defendant is not thereby given the right to say that he shall not be tried at all." (citations omitted)); *Ortiz-Kehoe v. Chippewa Corr. Fac. Warden*, No. 361179, 2022 WL 17724460, at *5 (Mich. Ct. App. Dec. 15, 2022) (noting that detention without a valid probable cause determination is rendered harmless by a subsequent valid circuit court conviction).

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976). It is well-settled that a purported violation of state law does not provide

11

a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*.

Moreover, the state court here determined that there were no jurisdictional defects. (Pet., ECF No. 1, PageID.3 (noting that the Manistee County Circuit Court denied habeas relief because Petitioner was improperly using habeas corpus as an appeal)); Order, *Rozengard v. Chlebowski*, No. 373929 (Mich. Ct. App. June 23, 2025) (denying leave to appeal the habeas corpus denial "for lack of merit in the grounds presented"). It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Specifically with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001). Accordingly, this Court is bound by the state court's determination that jurisdiction over Petitioner was established.

For all of the reasons stated above, Petitioner's claim that the trial court lacked jurisdiction is meritless. Petitioner has failed to demonstrate that the state court's rejection of his jurisdiction

12

argument was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief.

### C. Speedy Trial Violation

Petitioner also makes passing reference to a claim that his Sixth Amendment right to a speedy trial was violated. (Pet., ECF No. 1-1, PageID.6–7; Pet'r's Br., ECF No. 5, PageID.19.) In *Brown v. Romanowski*, 845 F.3d 703 (6th Cir. 2017), the Sixth Circuit Court of Appeals reviewed the clearly established federal law with respect to the constitutional requirement for a speedy trial:

> The Sixth Amendment guarantees in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. These rights apply to the states through the Fourteenth Amendment. *Klopfler v. North Carolina*, 386 U.S. 213, 223 (1967). The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished. *Doggett v. United States*, 505 U.S. 647, 654 (1992); *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986); *United States v. MacDonald*, 456 U.S. 1, 7–8 (1982); *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972); *United States v. Marion*, 404 U.S. 307, 320 (1971); *United States v. Ewell*, 383 U.S. 116, 120 (1966). The sole remedy for a violation of the speedy-trial right is dismissal of the charges. *See Strunk v. United States*, 412 U.S. 434, 439–40 (1973); *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999).
>
> In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial. *Barker* held that a court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. No one factor is dispositive. Rather, they are related factors that must be considered together with any other relevant circumstances. *Id.* at 533.

*Id.* at 712. The *Barker* Court acknowledged that its test was a flexible balancing test and, thus, "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Barker*, 407 U.S. at 529–530. The flexibility of the test has significant implications for this Court's review under the

AEDPA standard. "The more general the rule at issue'—and thus the greater the potential for reasoned disagreement among fair-minded judges—the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough*, 541 U.S. at 664).

In the Michigan state courts, the right to a speedy trial is guaranteed by the United States constitution, U.S. Const. amend VI; the Michigan constitution, Mich. Const. 1963 art.1, § 20; state statute, Mich. Comp. Laws § 768.1; and court rule, Mich. Ct. R. 6.004(D). *People v. Cain*, 605 N.W.2d 28, 39 (Mich. Ct. App. 1999); *People v. McLaughlin*, 672 N.W.2d 860, 867 (Mich. Ct. App. 2003). The Michigan state courts apply the *Barker* four-factor test "to determine if a pretrial delay violated a defendant's right to a speedy trial[,]" whether the speedy trial right at issue arises from federal or state law. *Cain*, 605 N.W.2d at 39 (citing *People v. Collins*, 202 N.W.2d 769 (Mich. 1972)).[4]

Petitioner reports that he raised his speedy trial claim in his state habeas petition. The Michigan Court of Appeals denied leave for lack of merit in the grounds presented. That merits determination is entitled to AEDPA deference by this Court. *See Werth v. Bell*, 692 F.3d 486, 493 (6th Cir. 2012) (applying AEDPA deference to a Michigan Court of Appeals order stating only

---

[4] Although the state courts apply clearly established federal law, the *Barker* test, to evaluate "speedy trial" claims, they apply it a little differently than the federal courts. The state courts shift the burden of proof with respect to prejudice based on the length of the delay, drawing the line at 18 months. *Cain*, 238 Mich. App. at 112. The federal courts, however, eschew such a "bright-line rule." *Brown*, 845 F.3d at 717. Instead, the federal "courts must conduct a functional analysis of the right in the particular context of the case." *Id.* (internal quotation marks omitted) (quoting *United States v. Ferreira*, 665 F.3d 701, 709 (6th Cir. 2011)); *see Barker*, 407 U.S. at 522. This is a difference between the federal and state applications of the test, but the difference does not render the state court's application unreasonable or contrary to *Barker*. *See, e.g.*, *Brown v. Bobby*, 656 F.3d 325, 329–330 (6th Cir. 2011) (concluding that Ohio's use of a 270-day rule was not "contrary to" *Barker*).

that leave to appeal was denied "for lack of merit in the grounds presented" (citing *Harrington*, 562 U.S. at 99–100)); *see also Smith v. Cook*, 956 F.3d 377, 386 (6th Cir. 2020) (noting that the *Harrington* presumption of a merits adjudication "prevails even when the state court's opinion wholly omits discussion of the federal claim").

Petitioner was arrested and arraigned for the CSC-III charges in early February 2015. His trial began on November 3, 2015, and the jury returned its verdict on November 5, 2015. Petitioner's trial began less than nine months after the complaint was filed against him. "A delay approaching one year is presumptively prejudicial and triggers application of the remaining three factors." *Maples*, 427 F.3d at 1026 (citing *Doggett*, 505 U.S. at 652 n.1). In *United States v. Gardner*, 488 F.3d 700 (6th Cir. 2007), the Sixth Circuit Court of Appeals considered the *Barker* factors when the delay was only nine months:

> The length of the delay is a threshold issue. That is, if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors. *Schreane*, 331 F.3d at 553 (citing *Barker*, 407 U.S. at 530, 92 S. Ct. 2182). A delay is presumptively prejudicial if it is "uncommonly long" or "extraordinary." *Id*. (citing *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)). The Sixth Circuit has found that a delay is presumptively prejudicial when it approaches one year. *Id*.
>
> In this case, the delay between the filing of Gardner's indictment and his trial was 265 days, or approximately nine months. Delays several months short of one year are not "uncommonly long," especially in cases involving multiple defendants and pre-trial motions. Accordingly, our examination of this claim "ceases" and we do not consider the other *Barker* factors. *Id*. We reject Gardner's Sixth Amendment speedy-trial claim.

*Gardner*, 488 F.3d at 719.

The delay of nine months at issue here also falls short of the threshold. Therfore, the Court concludes that Petitioner has failed to show a Sixth Amendment "speedy trial" violation, or that

the state court's denial of his speedy-trial claim is contrary to, or an unreasonable application of clearly established federal law. Accordingly, he is not entitled to habeas relief.

## IV.    Petitioner's Motion to Produce Evidence

Petitioner asks the Court to order Respondent to produce evidence establishing lawful jurisdiction over Petitioner. (ECF No. 7.) For the reasons stated above, the Bay County Circuit Court's lawful jurisdiction over Petitioner and his felony prosecution has been conclusively established. Accordingly, Petitioner's motion to produce evidence will be denied.

## V.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a

full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons the Court finds that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order granting Petitioner leave to proceed *in forma pauperis*, denying Petitioner's motion to produce evidence, and denying a certificate of appealability.

Dated:  December 23, 2025                                /s/ *Maarten Vermaat*
                                                                                   Maarten Vermaat
                                                                                   United States Magistrate Judge